IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DR. VIOLETA PASKAUSKIENE | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:05-CV-501-Y |
| | § | |
| UNIVERSITY OF NORTH TEXAS | § | |
| HEALTH SCIENCE CENTER and | § | |
| DR. ALAKANANDA BASU | § | |

ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending before the Court is Defendants' Motion to Dismiss [doc. # 111], filed December 15, 2006, and Defendants' Motion for Partial Summary Judgment [doc. # 128], filed January 9, 2007. After consideration, the Court GRANTS the motions.

I. BACKGROUND

Plaintiff Dr. Violeta Paskauskiene was employed as a research associate at defendant University of North Texas Health Science Center ("UNTHSC"). Her supervisor was defendant Dr. Alakananda Basu. In late 2003, Paskauskiene, a Lithuanian, began to believe that she was being treated differently and less favorably than research associates from Asia. On October 9, 2003, Paskauskiene complained to the human-resources department about the disparate treatment and unsafe working conditions.[1] The next day, Basu fired Paskauskiene based on "poor performance." (2nd Am. Comp. at 3.) Paskauskiene filed suit in this Court against UNTHSC and Basu[2] raising

---

[1] The unsafe-work-environment complaint was based on an incident that occurred in July 2003 when Paskauskiene pricked her finger with a needle during an experiment. Paskauskiene alleges that the incident was not properly reported and she was not tested for any blood-borne infections.

[2] Paskauskiene sued Basu in her official and individual capacities.

claims for racial and national-origin discrimination and for retaliatory discharge under Title VII,[3] § 1981,[4] and § 1983.[5]  She further raised common-law claims for tortious interference with prospective business relationships and for defamation.

On November 20, 2006, this Court dismissed Paskauskiene's § 1981 and § 1983 claims against UNTHSC and Basu in her official capacity based on Eleventh-Amendment immunity.  This Court also dismissed Paskauskiene's Title VII claim against Basu in her individual capacity.  Further, this Court concluded that UNTHSC and Basu in her official capacity were entitled to judgment as a matter of law on Paskauskiene's Title VII claims.  Thus, Paskauskiene's common-law claims against UNTHSC and Basu[6] and her § 1983 and § 1981 claims against Basu in her individual capacity were allowed to proceed.  UNTHSC and Basu again seek dismissal or summary judgment against Paskauskiene's remaining claims.[7]

---

[3] 42 U.S.C.A. §§ 2000e-2000h-6 (West 2003).

[4] 42 U.S.C.A. § 1981 (West 2003).

[5] 42 U.S.C.A. § 1983 (West 2003).

[6] UNTHSC and Basu's argument that Paskauskiene's complaint did not include the common-law claims is patently incorrect.  This Court granted Paskauskiene leave to amend her complaint on  September 11, 2006.  This amended complaint, which was also filed on September 11, clearly contains Paskauskiene's common-law claims.  (Am. Comp. at 4, 5.)

[7] The Court notes that this case could have been decided more expeditiously had counsel for UNTHSC and Basu been more diligent about this case when summary judgment and dismissal were first sought.  By waiting until the Court disposed of the first round of dispositive motions and then again seeking leave for summary disposition of Paskauskiene's claims, counsel has imposed additional and needless work on this Court and on Paskauskiene.

II. MOTION TO DISMISS

UNTHSC and Basu argue that Paskauskiene's common-law claims against UNTHSC and Basu in her official capacity should be dismissed based on Eleventh-Amendment immunity. *See* FED. R. CIV. P. 12(b)(1). Indeed, the Eleventh Amendment generally divests federal courts of jurisdiction to entertain citizen suits directed against states. *See Stem v. Ahearn*, 908 F.2d 1, 2 (5th Cir. 1990). This bar applies regardless of the nature of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The immunity from suit is not avoided by suing state employees in their official capacity because the claim remains one against the state treasury. *See Stem*, 908 F.2d at 3. Thus, it makes no difference if the action is brought against the state directly, or indirectly against subordinate agencies or officeholders operating in their official capacities: immunity applies unless waived by the state or Congress. *See State of Tex. by and through Bd. of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 820 (5th Cir. 1998).

Regarding Paskauskiene's common-law claims against UNTHSC and Basu in her official capacity, it is clear that neither Texas nor Congress waived the state's Eleventh-Amendment immunity for these intentional torts. *See McCall v. Dallas Indep. Sch. Dist.*, 169 F. Supp. 2d 627, 638-39 (N.D. Tex. 2001); *Jackson v. Tex. A&M Univ. Sys.*, 975 F. Supp. 943, 946 (S.D. Tex. 1996); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (Vernon 2005). It is undisputed that Basu, sued in her official capacity, was an employee of UNTHSC at all relevant times and that UNTHSC is a state agency. Thus, these claims are barred by the Eleventh Amendment.

3

III.. PARTIAL SUMMARY JUDGMENT

Basu, as sued in her individual capacity,[8] argues that she is entitled to judgment as a matter of law on Paskauskiene's claims under § 1981 and § 1983 based on qualified immunity.  She also asserts that summary judgment is proper regarding Paskauskiene's common-law claims because she is entitled to official immunity.

A. SUMMARY-JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party need not produce evidence showing the absence of an issue of fact with respect to an issue on which the nonmovant bears the burden of proof, however.  Rather, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim.  *See id.* at 323-25.

When the moving party has carried its summary-judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions or by only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the evidence is merely colorable or is not

---

[8]In this section of the order, "Basu" refers to her solely in her individual capacity.

significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

### B. QUALIFIED IMMUNITY

To the extent Paskauskiene seeks money damages directly from Basu for her actions taken under color of state law, Basu may invoke her right to qualified immunity. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991). Public officials performing discretionary functions enjoy immunity from suits for damages, provided their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When this Court is called upon to confer qualified immunity upon a government official accused of violating a federal constitutional or statutory right, the Fifth Circuit requires the Court first to employ a three-part inquiry. *See Conroe Creosoting Co. v. Montgomery Cty., Tex.*, 249 F.3d 337, 340 (5th Cir. 2001). First, the Court must determine whether the plaintiff has actually alleged the violation of a federal constitutional or statutory right. *See id.* If the Court determines that she has, the Court must then decide whether, at the time of the alleged violation, that right was so clearly established that a reasonable government official in Basu's situation would have understood that her conduct violated that right. *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).[9] Finally, the

---

[9] This second part of the test is often referred to as "objective reasonableness." Thus, "whether an official protected by qualified immunity may be held personally liable turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established'

5

Court must "determine whether the record indicates that the violation occurred, or gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly established right." *Conroe Creosoting*, 249 F.3d at 340.  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v . Briggs*, 475 U.S. 335, 341 (1986).  The burden is on the plaintiff to show the inapplicability of the qualified-immunity defense.  *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

Paskauskiene brought claims against Basu for violations of § 1981 and § 1983.  In other words, Paskauskiene alleged that Basu illegally fired her based on her national origin.  To establish such a claim, Paskauskiene must prove that:  (1) she is a member of a racial minority, (2) Basu intended to discriminate on the basis of Paskauskiene's race or national origin, and (3) the discrimination concerns one or more of the activities enumerated in § 1981.  *See Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002).

It is clear that Basu's decision to fire Paskauskiene was objectively reasonable.  Basu based her decsion to fire Paskauskiene during her probationary period on that fact that she did not "display the skills necessary to conduct highly complex cancer research in a competent manner."  (Defs.' App. at 3, 30-31.)  Indeed, the summary-judgment record is devoid of any evidence, other than Paskauskiene's self-serving and unsupported statements, that Basu fired Paskauskiene for any reason other than her substandard job performance.  Thus, Basu is entitled to qualified immunity.  *See, e.g., Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 2d 703, 729-30 (S.D. Tex. 2002).

---

at the time it was taken."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

## C. OFFICIAL IMMUNITY

Regarding state-law claims, government employees are entitled to official immunity from suit arising from the performance of their discretionary duties performed in good faith as long as they were acting within the scope of their authority. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653-58 (Tex. 1997). Official immunity is an affirmative defense; thus, Basu must conclusively prove each element of the defense to be entitled to summary judgment. *See Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). A discretionary function—as distinguished from a ministerial duty, which requires rote obedience to orders or performance of a function to which the actor has no choice—involves a personal deliberation, decision, and judgment. *See Chambers*, 883 S.W.2d at 654. Whether an action is discretionary or ministerial is a question of law. *See Associated Press v. Cook*, 17 S.W.3d 447, 461 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

To obtain official immunity on summary judgment, an official must prove that a reasonably prudent official might have believed that her action was appropriate under the circumstances. *See id.* Even if an official's actions were taken negligently, that would not be sufficient to defeat a showing of good faith. *Se id.* at 655. The test for good faith is objective and is substantially derived from the test for objective reasonableness in a qualified-immunity claim for federal constitutional violations. *See Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 413 (5th Cir. 2002).

The summary-judgment evidence shows that Basu had discretion in personnel matters, including hiring, evaluating, and making decisions such as whether to terminate her research assistants. (Defs.' App. at 1-3.) Paskauskiene has provided no controverting proof to show that Basu's actions in terminating her employment were not discretionary. As stated in this Court's

discussion of Basu's qualified immunity, there is no evidence, other than Paskauskiene's self-serving statements, that Basu acted in bad faith. Indeed, Paskauskiene was an at-will, probationary employee at the time she was fired. The record does not support Paskauskiene's allegations that she was fired on the basis of her national origin. Thus, Basu is entitled to official immunity.

## IV. CONCLUSION

Paskauskiene's common-law claims against UNTHSC and Basu in her official capacity are barred by the Eleventh Amendment. Thus, these claims are dismissed. Paskauskiene's § 1981 and § 1983 claims against Basu in her individual capacity are barred by Basu's qualified immunity. Basu in her individual capacity is entitled to official immunity regarding Paskauskiene's common-law claims. Thus, judgment as a matter of law is appropriate on those claims against Basu individually.[10]

SIGNED March 9, 2007.

*(signature)*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[10] Because this order, along with this Court's order of November 20, 2006, finally disposes of all of Paskauskiene's claims, the trial setting for August 2007 is CANCELED.